UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINDSAY DROZ,

           Plaintiff,

   v.

BOSTON SCIENTIFIC CORPORATION,

           Defendant.

CASE NO. 2:20-CV-48-RSM-DWC

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

This matter comes before the Court on Plaintiff Lindsay Droz's Motion to Compel. Dkt. 27. Droz requests an order compelling Defendant Boston Scientific Corporation ("BSC") to produce documents responsive to her Requests for Production Nos. 10, 15, 18, 19, 20, 22, and 23 for (1) all sales representatives in the Pacific Northwest region of the Rhythm Division from 2015 through 2019; and (2) Electrophysiology ("EP") Division sales representatives in the Rhythm Division from 2015 through 2019. *Id*. BSC opposes the motion. Dkt. 31. After review of the relevant record, the Motion to Compel (Dkt. 27) is GRANTED.

## I. Background

Droz was a sales representative for BSC from 2005 until she resigned on February 11, 2020. Dkt. 28, Droz Doc, p. 1; Dkt. 23, p. 8. After beginning in the Interventional Cardiology division for the Pacific Northwest Region, she moved to the EP Division in 2010. Dkt. 23, p. 2; Dkt. 27, p. 3. Between 2010 and 2015, Droz was ranked as a top EP sales representative for BSC. Dkt. 23, p. 3. In 2015, BSC combined the EP and Cardiac Rhythm Management ("CRM") divisions to form a nationwide Rhythm Division. Dkt. 28, Droz Dec., p. 2. The Rhythm Division included: (a) sales representatives who sell EP products; (b) sales representatives who sell CRM products; and (c) sales representatives who sell both EP and CRM products. *Id*. CRM and EP sale representatives share the same managers, who all report to the same Area Director within the Rhythm Division. *Id*. at 2-3. All sale representatives in the Pacific Northwest Region ultimately reported to Area Director Ken Crowley (or his successor) who then reported to Senior Vice President Scott Olsen (or his successor). *Id*.

Droz applied for the position as EP Sales Manager in 2015 and interviewed with then-Area Director, Crowley. Dkt. 23, p. 3. Crowley did not select her for the position. *Id*. In July 2016, she began reporting to two regional managers, Mark Hoy and Brett Britton, both of whom were under the supervision of Crowley. *Id*. In December 2016, Crowley, Hoy, and Britton cut Droz's territory in half. *Id*. at pp. 3-4. She contends she was treated disparately from the men she worked with in the EP Division because none of them had territories reduced. *Id*. at pp. 2-6. Around the same time frame, Crowley offered her an employment agreement with a guaranteed salary. *Id*. at p. 4. Droz declined to sign the agreement because she was aware BSC had offered employment agreements with much higher guarantees to male colleagues throughout the country and within the Pacific Northwest Region combined EP/CRM division. *Id*.

1    In March 2017, Droz applied for an open regional sales manager position when Britton
2  moved to another region. *Id*. at 5. Crowley awarded the position to Hoy in July 2017. *Id*. As part
3  of her performance review process at the end of 2017, Droz informed Hoy of her desire to
4  "develop and help create more of an opportunity for myself and other talented females[.]" *Id*. A
5  few weeks later, Hoy gave her the lowest possible rating in her 2017 review. *Id*. at 6. In July
6  2018, Hoy placed Droz on a Verbal Corrective Action Plan and, at the end of the first quarter of
7  2019, he placed her on a Written Corrective Action Plan. *Id*. Droz contends no male sale
8  representatives with sales results similar to hers had been placed on a correction plan. *Id*.

9    Droz filed a written complaint of discrimination and retaliation with BSC's Human
10 Resource department on May 15, 2019. *Id*. BSC instigated an investigation, but Droz's anxiety
11 about the ongoing investigation and her doctor's recommendation to take medical leave caused
12 her to tender her resignation on February 11, 2020. *Id*. at 7.

13   In this action, Droz asserts claims under the Washington Law Against Discrimination and
14 constructive discharge where she seeks lost wages and other damages along with reasonable
15 attorney's fees and costs. *Id*. at 8-10.

16 **II.    Discussion**

17   A. <u>Legal Standard</u>

18   Under Federal Rule of Civil Procedure 26(b)(1)

19   Parties may obtain discovery regarding any nonprivileged matter that is relevant to
     any party's claim or defense and proportional to the needs of the case, considering
20   the importance of the issues at stake in the action, the amount in controversy, the
     parties' relative access to relevant information, the parties' resources, the
21   importance of the discovery in resolving the issues, and whether the burden or
     expense of the proposed discovery outweighs its likely benefit.
22
   Information within this scope of discovery need not be admissible in evidence to be
23
   discoverable. *Id.* "District courts have broad discretion in determining relevancy for discovery
24

1 purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing
2 *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). If requested discovery is not answered,
3 the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1).
4 The party that resists discovery has the burden to show why the discovery request should be
5 denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

      B.  <u>Analysis</u>

Droz seeks production of documents related to the expectations, performance, and compensation of (1) all sales representatives in the Pacific Northwest region of the Rhythm Division from 2015 through 2019, and (2) EP sales representatives in the Rhythm Division from 2015 through 2019. Dkt. 27, p. 2. Specifically, Droz seeks documents that include employment agreements, compensation plans, compensation reports, sales reports, and corrective action/performance improvement plans. *Id*. BSC contends the only comparable type of sale representative to Droz are the EP sales representatives in the Pacific Northwest and she is not entitled to discovery beyond this group of sales representatives for the time period 2015-2019. Dkt. 31. The parties agree on the time frame, but do not agree on whether the proper comparators to Droz include the (1) CRM sales representatives and sales representative who sell both EP and CRM products in the Pacific Northwest Region, and (2) all EP Rhythm sales representatives nationwide.

    1.  *All sales representatives in the Pacific Northwest region of the Rhythm Division from 2015 through 2019*

In employment discrimination cases, when the plaintiff seeks statistics to demonstrate a pattern of discrimination or disparate treatment (so-called "comparator evidence") to support either her prima facie case or her argument that the defendant's articulated reason for the adverse employment decision was pretextual, the Ninth Circuit has recognized a need to extend

discovery past the plaintiff's employing unit. *Garcia v. Courtesy Ford, Inc.*, 2007 WL 1430196, at *2–3 (W.D. Wash. May 10, 2007) (citing *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1362-1363 (9th Cir. 1985)). Individuals are similarly situated to the plaintiff (*i.e.*, comparators) "when they have similar jobs and display similar conduct." *Walech v. Target Corp.*, 2012 WL 1068068, at *8 (W.D. Wash. Mar. 28, 2012) (comparator evidence relevant "when other employees work at the same part of the company as plaintiff, have the same performance, qualifications, and conduct, and have a common supervisor"). The test is not simply that the employees share the same job title. *Id.*; *see also Lauer v. Longevity Med. Clinic PLLC*, 2014 WL 5471983, at *5 (W.D. Wash. Oct. 29, 2014) (finding that to be "comparators," "[c]oworkers need not have the same supervisor or job title as long as they are subject to the same behavioral standards and subject to disciplinary decisions made by the same decision-maker").

Additionally, "[i]n employment discrimination suits, in which the inner mental motivations behind allegedly discriminatory acts are near impossible to prove, '*pattern and practice*' evidence is both discoverable and admissible to prove discriminatory intent." *Lauer*, 2014 WL 5471983 at *4 (citing *U.S. Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 715–717, 103 S. Ct. 1478, 75 L. Ed.2d 403 (1983); *Heyne v. Caruso*, 69 F.3d 1475, 1479–1481 (9th Cir. 1995); *Hawkins v. Hennepin Technical Ctr.*, 900 F.2d 153, 155 (8th Cir. 1990)). "[E]vidence from non-party personnel files, such as the position, disciplinary records, wages, and promotion history of employees both inside and outside the protected class, has been held to constitute discoverable comparator evidence." *Lauer*, 2014 WL 5471983, at *5.

Here, although Droz was an EP sales representative in the Pacific Northwest region, she seeks documents pertaining to all sales representatives in the Pacific Northwest region. Dkt. 27. In support, she contends there are meaningful comparisons that could be made among all sales

representatives in her region. *Id*. These comparisons include that all these sales representatives functioned at the same level, reporting to the same managers who set their sales goal and compensation and disciplined them. *Id*. All these sales representatives were overseen by the same Area Director, were judged on the same quarter system, and ranked on the "Rhythm Scale", a metric based on their percent to quota and performance. *Id*. BSC contends it should be required to produce documents only as to the EP sales representatives in the Pacific Northwest region as they are the only proper comparators to Droz. Dkt. 31. In support, BSC contends that, because the roles of EP and CRM representatives differ significantly in training, responsibilities, territories, account profiles, market forces, targets, rankings and compensation, no CRM representative could be similarly situated in all material respects to Droz. *Id*.

      The Court agrees with Droz. The emphasis is not that the comparators align on all material respects, but rather align on sufficient factors in a material way. As such, though Droz may differ from sale representatives who sell CRM and both CRM and EP products in some respects, they need not be identically situated. *See Sims v. Lakeside Sch*., 2008 WL 2811164, at *11 (W.D. Wash. July 16, 2008). In short, EP sales representatives and all other sales representatives in the Pacific Northwest Region are more alike than they are different, especially here when they all reported to the same managers and area director.

      Furthermore, evidence presented to the Court shows the all sales representatives in the Pacific Northwest Region worked together. For example, the EP and CRM divisions were combined into one division; the sales representatives shared the same managers, who reported to same supervisor. Dkt. 28, Droz Dec, ¶¶ 5-7. The EP and CRM sales representatives both worked in the EP lab, attended the same national meetings, had sales quotas with the same physicians, and often conducted joint meetings with the customer. *Id*. at ¶ 9. Evidence also shows that during

one review, Droz was told to "better engage her CRM counterparts and encourage them to assist her in winning cases and discovering capital opportunities." Dkt. 32-1, p. 3. These examples indicate all these sales representatives were less independent and more similar than BSC contends, making evidence related to all the sales representatives in the Pacific Northwest Region relevant and discoverable.

    2. *All EP Rhythm sales representatives nationwide.*

Droz seeks all documents pertaining to EP Division sales representatives nationwide from 2015 through 2019. Dkt. 27. BSC asserts that nationwide EP sales representatives are not comparators because BSC sets targets geographically, so the Pacific Northwest region targets and compensation is not comparable to a different regions that have different managers. Dkt. 31, p. 11.

The evidence shows that during Droz's employment she was compared to other sales representatives nationwide, making this evidence relevant. *See*, *e.g.*, Dkt. 27, pp. 3-5. For example, during BSC's 2017 review of Droz, BSC compared and ranked Droz's performance in relation to national and area personnel. Dkt. 31-2, p. 2. The 2017 review indicated Droz was given a less favorable review because she finished 24th out of 28 eligible representatives in the President's Club ranking. *Id*. at p. 3. Moreover, in Droz's Verbal Corrective Action, BSC compared Droz's results nationally, stating, "[t]hrough the first half of 2018, [Droz is] tracking at 77% to EP plan compared to the national average of 97%." Dkt. 32-3, p. 2. As BSC provided performance evaluations and disciplinary actions based on national averages and statistics, BSC has failed to show the requested documents for the EP Rhythm sales representatives nationwide is not a proper comparator or is irrelevant. BSC has also failed to adequately show producing this is overburdensome.

ORDER GRANTING PLAINTIFF'S MOTION TO
COMPEL - 7

C. Conclusion

For the above stated reasons, the Court finds BSC has not shown the requested discovery should be denied. Therefore, Plaintiff's Motion to Compel (Dkt. 27) is granted.

**III.     Attorney's Fees**

Droz moves for an award of expenses pursuant to Federal Rule Civil Procedure 37(a)(5)(A). Dkt. 27. When a motion to compel is granted, sanctions in the form of "reasonable expenses" which includes attorney fees must be awarded against the party and attorney whose conduct necessitated the discovery motion. Fed. R. Civ. P. 37(a)(5)(A). The presumption in favor of such awards serves a "deterrent function by discouraging unnecessary involvement by the court in discovery." *Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978). But the Court must not order payment if the movant did not make a good faith attempt to confer, nondisclosure was substantially justified, or other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

Here, the Court finds Droz did make a good faith attempt to meet and confer, that BSC did not meet its burden to show why the discovery request should denied, and that no other circumstances make an award of reasonable expense unjust. Thus, the exceptions in Rule 37 do not apply and a fee award is appropriate. Droz, however, has not provided an accounting of the expenses incurred in filing the Motion to Compel. As such, Droz is directed to provide the Court the specific amount of expenses reasonably expended in making the Motion to Compel, including documentation to support the request for expenses, on or before September 18, 2020. BSC may file a response to Droz's filing on or before September 25, 2020. The Court will then determine a reasonable fee award.

IV. **Conclusion**

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Droz's Motion to Compel (Dkt. 27) is GRANTED.

On or before September 25, 2020, BSC shall produce to Droz:

1. In response to Plaintiff's Requests for Production No. 14, 25, and 26: Complete daily or weekly sales reports (whichever exist) disseminated on the last day of each quarter for the years 2015 through 2019 for all sales representatives in the Pacific Northwest region;

2. In response to Plaintiff's Requests for Production No. 15 and 22: all employment agreements offered to sales representatives (a) in the EP division nationwide from 2015 to 2019; and (b) in the Pacific Northwest division (both EP and CRM) from 2015 to 2019;

3. In response to Plaintiff's Requests for Production No. 18, 19, and 20: (a) annual Compensation plans for CRM and EP sales representatives from 2015 through 2019; and (b) Total Compensation Reports for all EP sales representatives nationwide and all sales representatives in the Pacific Northwest Region (both EP and CRM); and

4. In response to Plaintiff's Requests for Production No. 10 and 23: Corrective action or performance improvement plans issued to all sales representatives in the Pacific Northwest division from 2015 through 2019.

An award of reasonable expenses is also granted, pending Droz's production of documentation. Droz shall file documentation showing the specific amount of expenses

reasonably expended in making the Motion to Compel on or before September 18, 2020. BSC may file a response to Droz's documented expenses on or before September 25, 2020.

Dated this 1st day of September, 2020.

David W. Christel
United States Magistrate Judge